Russell S. Thompson, IV (029098)
Thompson Consumer Law Group, PC
5235 E. Southern Ave., D106-618
Mesa, AZ 85206
Telephone: (602) 388-8898
Facsimile: (866) 317-2674
rthompson@ThompsonConsumerLaw.com
Attorneys for Plaintiff

UNITED STATES DISTRICT COURT

FOR THE DISTRICT OF ARIZONA

| | |
|---|---|
| Stephane Garcia, | ) Case No. |
| | ) |
| Plaintiff, | ) **COMPLAINT AND TRIAL BY JURY** |
| | ) **DEMAND** |
| vs. | ) |
| | ) |
| Santander Consumer USA, Inc., PAR, Inc., | ) |
| and Knight Rider Towing & Recovery Inc. | ) |
| | ) |
| Defendant. | ) |

**NATURE OF ACTION**

1.      Plaintiff Stephane Garcia ("Plaintiff") brings this action against Defendants Santander Consumer USA, Inc. ("Santander"), PAR, Inc. ("PAR"), and Knight Rider Towing & Recovery, Inc. (KRTR) pursuant to the Fair Debt Collection Practices Act ("FDCPA"), 15 U.S.C. § 1692 *et seq*., and Arizona common law.

**JURISDICTION, VENUE, AND STANDING**

2.      This Court has jurisdiction pursuant to 15 U.S.C. § 1692k(d), 28 U.S.C. § 1331 and 28 U.S.C. § 1367.

Complaint - 1

3. Venue is proper before this Court pursuant to 28 U.S.C. § 1391(b), where the acts and transactions giving rise to Plaintiff's action occurred in this district, where Plaintiff resides in this district, and where Defendants transact business in this district.

4. "In determining whether an intangible harm constitutes injury in fact, both history and the judgment of Congress play important roles." *Spokeo, Inc. v. Robins*, 136 S. Ct. 1540, 1549, 194 L. Ed. 2d 635 (2016), *as revised* (May 24, 2016). Congress is "well positioned to identify intangible harms that meet minimum Article III requirements," thus "Congress may 'elevat[e] to the status of legally cognizable injuries concrete, *de facto* injuries that were previously inadequate in law.'" *Id.* (quoting *Lujan v. Defs of Wildlife*, 504 U.S. 555, 578 (1992).

5. "Without the protections of the FDCPA, Congress determined, the '[e]xisting laws and procedures for redressing these injuries are inadequate to protect consumers.'" *Lane v. Bayview Loan Servicing, LLC*, No. 15 C 10446, 2016 WL 3671467, at *3 (N.D. Ill. July 11, 2016) (quoting 15 U.S.C. § 1692(b)). Thus, a failure to honor a consumer's right under the FDCPA constitutes an injury in fact for Article III standing. *See id.* at *3 (holding that a consumer "has alleged a sufficiently concrete injury because he alleges that [Defendant] denied him the right to information due to him under the FDCPA."); *see also Church v. Accretive Health, Inc.*, No. 15-15708, 2016 WL 3611543, at *3 (11th Cir. July 6, 2016) (holding that consumer's § 1692g claim was sufficiently concrete to satisfy injury-in-fact requirement).

6. "[E]ven though actual monetary harm is a sufficient condition to show concrete harm, it is *not* a necessary condition." *Lane*, 2016 WL 3671467 at *4 (emphasis in original).

## THE FAIR DEBT COLLECTION PRACTICES ACT

7. Congress enacted the FDCPA in order to eliminate "abusive debt collection practices by debt collectors [and] to insure that those debt collectors who refrain from using abusive debt collection practices are not competitively disadvantaged." *Clark v. Capital Credit & Collection Servs., Inc.*, 460 F.3d 1162, 1179-80 (9th Cir. 2006) (citing 15 U.S.C. § 1692(e)).

8. To protect consumers and ensure compliance by debt collectors, "the FDCPA is a strict liability statute." *McCollough v. Johnson, Rodenburg & Lauinger, LLC*, 637 F.3d 939, 948 (9th Cir. 2011).

9. Strict liability enhances "the remedial nature of the statute," and courts are "to interpret it liberally" to protect consumers. *Clark*, 460 F.3d at 1176.

10. In addition, by making available to prevailing consumers both statutory damages and attorneys' fees, Congress "clearly intended that private enforcement actions would be the primary enforcement tool of the Act." *Baker v. G.C. Servs. Corp.*, 677 F.2d 775, 780-81 (9th Cir. 1982); *see also Tourgeman v. Collins Fin. Servs., Inc.*, 755 F.3d 1109, 1118 (9th Cir. 2014).

11. Violations of the FDCPA are assessed under the least sophisticated consumer standard which is "'designed to protect consumers of below average sophistication or intelligence,' or those who are 'uninformed or naïve,' particularly

when those individuals are targeted by debt collectors." *Gonzales v. Arrow Fin. Servs., LLC*, 660 F.3d 1055, 1061 (9th Cir. 2011) (quoting *Duffy v. Landberg*, 215 F.3d 871, 874-75 (8th Cir. 2000)).

12. "An FDCPA Plaintiff need not even have actually been misled or deceived by the debt collector's representation; instead, liability depends on whether the *hypothetical* 'least sophisticated debtor' likely would be misled." *Tourgeman*, 755 F.3d at 1117-18 (emphasis in original).

13. "[B]ecause the FDCPA is a remedial statute aimed at curbing what Congress considered to be an industry-wide pattern of and propensity towards abusing debtors, it is logical for debt collectors—repeat players likely to be acquainted with the legal standards governing their industry—to bear the brunt of the risk." *Clark*, 460 F.3d at 1171-72; *see also FTC v. Colgate–Palmolive Co.,* 380 U.S. 374, 393 (1965) ("[I]t does not seem unfair to require that one who deliberately goes perilously close to an area of proscribed conduct shall take the risk that he may cross the line.") (internal quotations omitted).

**TRESPASS TO CHATTEL UNDER ARIZONA COMMON LAW**

14. The tort of trespass to a chattel may be committed by intentionally dispossessing another of a chattel or using or intermeddling with a chattel in the possession of another. *Koepnick v. Sears Roebuck & Co.*, 158 Ariz. 322, 330–31, 762 P.2d 609, 617–18 (Ct. App. 1988) (citing *Restatement (Second) of Torts* § 217 (1965)).

15. "Dispossession" is defined as the intentional taking of a chattel from the possession of another without the other's consent, or the intentional barring of a

possessor's access to a chattel. *Koepnick*, 158 Ariz. At 331 (citing The *Restatement (Second) of Torts* § 221 (1965)).

16. One who commits a trespass to a chattel is subject to liability to the possessor of the chattel if, but only if, (1) he dispossesses the other of the chattel, (2) the chattel is impaired as to its condition, quality, or value, (3) the possessor is deprived of the use of the chattel for a substantial time or (4) bodily harm is caused to the possessor, or harm is caused to some person or thing in which the possessor has a legally protected interest. *Koepnick*, 158 Ariz. At 331 (citing The *Restatement (Second) of Torts* § 221 (1965) Comment B).

**PARTIES**

17. Plaintiff is a natural person who at all relevant times resided in the State of Arizona, County of Maricopa, and City of Phoenix.

18. Defendant, Santander, is an automobile finance company that regularly takes assignment of consumer debts.

19. Defendant, PAR is an Indiana corporation that at all relevant times, was acting as a repossession agent working at the behest of Santander.

20. PAR is an entity using instrumentalities of interstate commerce or the mails in any business the principal purpose of which is the enforcement of security interests.

21. PAR is a "debt collector" as defined by 15 U.S.C. § 1692a(6).

22. KRTR is an Arizona corporation that at all relevant times was acting as a repossession agent working at the behest of Santander.

23. KRTR is an entity using instrumentalities of interstate commerce or the mails in any business the principal purpose of which is the enforcement of security interests.

24. KRTR is a "debt collector" as defined by 15 U.S.C. § 1692a(6).

## FACTUAL ALLEGATIONS

25. On February 5, 2019, Plaintiff purchased a 2008 Ford F-250 pick-up truck (the "Vehicle") from Non-Party Scottsdale Wholesale Direct.

26. Plaintiff purchased the Vehicle for their own personal, family and household use.

27. Plaintiff purchased the vehicle outright, and there was no lien on the Vehicle.

28. Thereafter, Plaintiff enjoyed the use of the Vehicle without event.

29. On or before May 9, 2019, for reasons unknown, Santander hired PAR to repossess Plaintiff's vehicle—notwithstanding the fact that Plaintiff had purchased his vehicle outright and there was no lien on the vehicle.

30. Upon information and belief, PAR engaged KRTR to take the Vehicle.

31. On May 9, 2019, Plaintiff went to the grocery store and shopped for groceries for 20-30 minutes.

32. When he emerged, groceries in hand, he discovered his vehicle was taken.

33. Plaintiff was panicked, when the vehicle was taken, it contained a loaded gun, the keys to Plaintiff's home, Plaintiff's prescription medication, and various documents with his name and address on them.

34. Plaintiff believed his vehicle had been stolen, that the thief was now armed, and potentially laying an ambush for him at his residence.

35. He contacted the authorities and learned that Santander, PAR, and KRTR had taken his vehicle and sent it to Manheim Phoenix to be auctioned off.

36. For the next several days, Plaintiff made numerous calls to Santander and PAR in an attempt to reclaim his vehicle.

37. Plaintiff was repeatedly given the run around by Santander and PAR, even after he provided Santander proof of his identity and that he was the actual owner of the vehicle.

38. During this time, Plaintiff demanded that PAR at least allow him to retrieve his personal property. However, PAR refused Plaintiff's request.

39. Eventually, after several days of fighting, PAR relented and allowed Plaintiff to reclaim his personal effects.

40. However, PAR would not release the vehicle to Plaintiff, as Santander had fast-tracked the sale of the vehicle and had it sent to an auction house in Tolleson.

41. Upon learning that Santander had fast-tracked the sale of his vehicle, Plaintiff was furious. He again called Santander and after numerous attempts was able to convince Santander that he had title to the vehicle.

42. Thereafter, Plaintiff was able to reclaim his vehicle from the auction house in Tolleson.

43. Before Plaintiff would be allowed to even see his vehicle, Defendants forced Plaintiff to sign a document which: (1) falsely stated that he had been given an

opportunity to view the vehicle; (2) stated that the vehicle was not damaged, and (3) purported to release all Defendants from liability.

44. Due to Defendants' refusal to return the Vehicle, and their actions in fast-tracking the sale of the Vehicle, Plaintiff had no reasonable option other than to sign the document he was presented.

45. There was no consideration for any release embodied in Defendant's document, because Defendants had a preexisting duty to return to Plaintiff the vehicle they had stolen from him.

46. At the time KRTR took possession of Plaintiff's vehicle, it had no legal authority to do so.

47. At the time KRTR took possession of Plaintiff's vehicle, PAR had no legal authority to request KRTR to do so.

48. At the time KRTR took possession of Plaintiff's vehicle, Santander had no right to request it to do so.

49. As a result of Defendants' taking of Plaintiff's vehicle, he has suffered severe emotional distress and aggravation.  Because he was deprived of his prescription medication, the eye infection it was prescribed to treat worsened and Plaintiff had to make a trip to the hospital.

## COUNT I
## VIOLATION OF 15 U.S.C. § 1692f(6)(A)
## KRTR AND PAR

50. Plaintiff repeats and re-alleges each factual allegation contained above.

51. Neither KRTR nor PAR had legal authority to repossess Plaintiff's vehicle or its contents.

52. KRTR violated 15 U.S.C. § 1692f(6)(A) by taking or threatening to take non-judicial action to effect dispossession or disablement of Plaintiff's property where there was no present right to possession of the property claimed as collateral through an enforceable security interest.

53. PAR, by virtue of its status as a "debt collector" under the FDCPA, is liable for the conduct of KRTR, the debt collectors it retained to collect on its behalf.

WHEREFORE, Plaintiff prays for relief and judgment, as follows:

a) Adjudging that KRTR violated 15 U.S.C. § 1692f(6)(A);

b) Adjudging that PAR is liable for KRTR's violation of 15 U.S.C. § 1692f(6)(A);

c) Awarding Plaintiff statutory damages, pursuant to 15 U.S.C. § 1692k(a)(2)(A), in the amount of $1,000.00;

d) Awarding Plaintiff actual damages, pursuant to 15 U.S.C. § 1692k(a)(1);

e) Awarding Plaintiff reasonable attorneys' fees and costs incurred in this action pursuant to 15 U.S.C. § 1692k(a)(3);

f) Awarding Plaintiff pre-judgment and post-judgment interest as permissible by law; and

g) Awarding such other and further relief as the Court may deem proper.

**COUNT II**
**COMMON LAW TRESPASS TO CHATTEL**
**KRTR AND SANTANDER**

54. Plaintiff repeats and re-alleges each factual allegation contained above.

55. KRTR intentionally took possession of Plaintiff's vehicle and its contents.

56. At the time KRTR took possession of Plaintiff's vehicle and its contents, Plaintiff did not consent to KRTR'S possession of his vehicle or its contents.

57. KRTR had no legal authority to take possession of Plaintiff's' vehicle or its contents.

58. By taking possession of Plaintiff's vehicle and its contents, KRTR "dispossessed" Plaintiff of his vehicle and its contents.

59. As a result of KRTR dispossession, Plaintiff was deprived of the use of his vehicle and its contents for a substantial time.

60. As a result of KRTR'S dispossession, Plaintiff suffered fear, anxiety, and stress, as well as the expense and disutility associated with reporting the vehicle stolen, and taking the necessary steps to force KRTR and Santander to return the vehicle.

61. By intentionally dispossessing Plaintiff of his vehicle and its contents without legal authority to do so, KRTR committed trespass to chattel.

62. KRTR'S actions in taking Plaintiff's vehicle without authority, evidence that its conduct was guided by willful or wanton disregard of the interests of others.

63. In Arizona, secured creditors are liable for the torts committed by their agents. *See Rand*, 216 Ariz. at 434 ("[W]e hold that the nondelegable duty exception applies to independent contractors hired to accomplish the self-help repossession of a

motor vehicle. Accordingly, we conclude that although Interstate Recovery was an independent contractor, PFS remains liable for its trespass. . . .").

64. Santander, as the secured creditor that hired PAR and its agents, KRTR, is liable for KRTR's trespass.

65. Defendants' actions in: (1) taking Plaintiff's vehicle without justification, (2) refusing to immediately return it; and (3) forcing Plaintiff to sign a fraudulent release to cover their wrongful taking of his vehicle, evidence that Defendants' actions were outrageous and guided by an evil mind.

WHEREFORE, Plaintiff prays for relief and judgment, as follows:

a) Adjudging that PAR committed trespass to chattel with regard to Plaintiff's vehicle and its contents;

b) Awarding Plaintiff his actual damages in an amount to be proved at trial;

c) Awarding Plaintiff punitive damages in an amount to be proved at trial

d) Awarding Plaintiff pre-judgment and post-judgment interest as permissible by law; and

e) Awarding such other and further relief as the Court may deem proper.

**TRIAL BY JURY**

66. Plaintiff is entitled to and hereby demands a trial by jury.

Dated: July 25, 2019

                                      Respectfully submitted,

                                      <u>s/ Russell S. Thompson, IV</u>
                                      Russell S. Thompson, IV (029098)
                                      Thompson Consumer Law Group, PC

5235 E. Southern Ave., D106-618
Mesa, AZ 85206
Telephone: (602) 388-8898
Facsimile: (866) 317-2674
rthompson@ThompsonConsumerLaw.com